IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STELLA REEVES                           :

                                        :

        v.                              :   Civil Action No. DKC 23-02169

                                        :

UNIVERSITY OF MARYLAND
CAPITAL REGION HEALTH[1]                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case asserting violation of the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395 dd ("EMTALA"), is the motion for summary judgment filed by Defendant University of Maryland Capital Region Health ("Defendant" or "UMD Capital Health"). (ECF No. 25). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted.

**I.   Background[2]**

Plaintiff, Stella Reeves ("Plaintiff"), visited UMD Capital Health's emergency room on August 20, 2020, after experiencing

---

[1] The correct spelling of Defendant's name is "Capital" and not "Capitol" as contained in Plaintiff's complaint and shown on the docket. The Clerk will be directed to correct the spelling on the docket.

[2] Typically, in ruling on a summary judgment motion, a court sets forth facts as either undisputed or construed in the light most favorable to the plaintiff, based on the evidentiary presentations by the parties. In this case, that is not easy.

sharp chest pain. (ECF No. 5 ¶ 9). Plaintiff waited in the empty waiting room for two hours without receiving any medical attention. (*Id.* ¶ 13). When Plaintiff approached the registration clerk to seek assistance again, she slipped, fell, and hit her head. (*Id.* ¶ 16). After her fall, Plaintiff was seen by the emergency triage team and was evaluated and treated. (ECF No. 27, at 22).

Plaintiff was wearing a face mask (as required due to the COVID pandemic) that read "Black Lives Matter." She sensed that the screening delay was intentional and racially motivated, explaining that one of the triage nurses "was not in total agreement with" Plaintiff's Black Lives Matter mask. (ECF Nos. 5 ¶ 12; 27 at 16).

The record of what happened after her fall and evaluation is not entirely clear. Plaintiff's amended complaint focuses entirely on the purported inadequate screening evaluation and does not concern what happened after she saw the doctors or assert a failure to stabilize claim. Defendant's motion, though, asserts

---

Defendant does not present a statement of facts in its motion. Instead, the motion states that "Plaintiff . . . consented to medical treatment, received treatment, admission was recommended, however, the Plaintiff left against medical advice. (*See*, Exhibits A, B, and C)." (ECF No. 25-1, at 1). Those exhibits appear to be excerpts from a medical record. Plaintiff responds in kind, presenting unsworn statements of her own and attaching additional medical records. (ECF Nos. 25, 27). Thus, this Background section is the court's attempt to recite the facts based on potentially available evidence in the light most favorable to Plaintiff, noting conflicts where appropriate.

that it rendered treatment to which Plaintiff consented, that admission was recommended, but that Plaintiff left the hospital against medical advice. (ECF No. 25-1, at 1). Plaintiff counters that she was "prematurely discharged," causing her to go to another emergency medical care facility. (ECF No. 27, at 3). Defendant points to the medical records showing that Plaintiff left the hospital voluntarily against medical advice. (ECF No. 25-3). In response, Plaintiff argues that those records are false. (ECF No. 27, at 4).

On September 19, 2023, Plaintiff filed an amended complaint, alleging claims for (1) a violation of EMTALA, and (2) medical malpractice and negligence. (ECF No. 5). On January 2, 2024, Defendant moved to dismiss Plaintiff's claims. (ECF No. 10). On July 2, 2024, this court granted Defendant's motion to dismiss in part and denied it in part, dismissing Plaintiff's medical malpractice and negligence claims. (ECF No. 15). After a period of discovery, Defendant moved for summary judgment on December 9, 2024. (ECF No. 25). Plaintiff responded in opposition on December 31, 2024, (ECF No. 27), and Defendant filed a reply on January 8, 2025 (ECF No. 28). Without obtaining permission to file a surreply, Plaintiff responded on January 14, 2025. (ECF No. 29).

## II.  Standard of Review

### A.  Summary Judgment

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof. . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50 (citation modified).  At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the

4

motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).

## III. Analysis

Plaintiff sincerely and energetically contends that she was denied appropriate medical care in a situation that was very scary to her.  At this stage of the litigation, however, Plaintiff's own observations and beliefs are not enough.  Prompted by Defendant's motion for summary judgment, Plaintiff was required to come forward with record evidence, including expert testimony, sufficient to sustain her burden of proof, and she has not done so.

"EMTALA was passed by Congress . . . in response to a growing concern that hospitals were 'dumping' patients unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their emergency conditions were stabilized." *Brooks v. Maryland Gen. Hosp., Inc.*, 996 F.2d 708, 710 (4th Cir. 1993).  Under EMTALA, covered hospitals have two duties: (1) to provide "'appropriate medical screening . . . to determine whether or not an emergency condition . . . exists,' and (2) to stabilize the condition or, if medically warranted, to transfer the person to another facility[.]" *Id.* (citing 42 U.S.C. § 1395dd(a)-(c)).  Moreover, this statute "creates a private cause of action for '[a]ny individual who suffers personal harm as a direct result of a . . . hospital's violation of [the]

5

requirement[s][.]'" *Johnson v. Frederick Mem'l Hosp., Inc.*, No. 12-cv-2312-WDQ, 2013 WL 2149762, at *3 (D.Md. May 15, 2013) (quoting 42 U.S.C. § 1395dd(d)(2)(A)).

**A.  Duty to Screen**

Plaintiff's amended complaint alleges that Defendant breached its duty to screen Plaintiff by (1) delaying the screening of her emergency condition due to racial discrimination, and (2) failing to perform a chest x-ray and an MRI. (ECF No. 5). In response, Defendant argues that UMD Capital Health complied with all the requirements of EMTALA by "screen[ining], stabiliz[ing], diagnos[ing] and treat[ing]" Plaintiff. (ECF No. 25-1, at 4). Defendant further contends that Plaintiff does not substantiate her claims with any evidence. (*Id.* at 5). Plaintiff responds by reasserting the allegations made in her amended complaint and describing the difficulties she faced trying to obtain expert testimony. (ECF Nos. 27, 29).

EMTALA requires hospitals to provide medical screening that is "'appropriate' and 'within the capability of the hospital's emergency department[.]'" *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 879 (4th Cir. 1992). "[A] hospital defines which procedures are within its capabilities when it establishes a standard screening policy." *Bergwall v. MGH Health Servs., Inc.*, 243 F.Supp.2d 364, 372 (D.Md. 2002) (quoting *Repp v. Anadarko Mun.*

6

*Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994)).   And "if the hospital 'acts in the same manner as it would have for the usual paying patient,'" then the screening provided is appropriate within the meaning of the statute. *Id.* (quoting *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 272 (6th Cir. 1990)).   "EMTALA's proscriptions thus focus on a hospital's disparate treatment of – or its total failure to treat – an individual in need of emergency medical care."   *Id.* at 370 (citing *Vickers v. Nash Gen. Hosp., Inc.,* 78 F.3d 139, 143 (4th Cir. 1996) (stating that a duty to screen only requires defendants to "apply uniform screening procedures to all individuals coming to the emergency room")).

To prevail on her claim, Plaintiff must either prove that she was not screened at all or provide evidence that "[she] received materially different screening than that provided to others in [her] condition." *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 84 (1st Cir. 2000); *see also Johnson*, 2013 WL 2149762 at *4 ("Because [plaintiff] ha[s] not alleged that [the hospital] failed to screen [him], or screened him differently from patients presenting like conditions, [he] ha[s] failed to state claim under § 1395dd(a)").   Here, while Plaintiff concedes that she was "evaluated" and "treated" by UMD Capital Health eventually during her emergency room visit (ECF No. 27, at 22), she asserts that the evaluation was improperly delayed due to racial discrimination.

7

EMTALA prohibits disparate treatment regardless of what motivated the conduct—adding a racial discrimination element is not necessary. Plaintiff first must provide sufficient evidence demonstrating that Defendant's screening procedures were applied disparately.

As evidence, Plaintiff offers her medical records from subsequent visits after her treatment at UMD Capital Health. *See* (ECF No. 27-1). Plaintiff also narrates her experience at UMD Capital Health's emergency room and asks that the court accept it as "sworn expert testimony." (ECF No. 27). However, even if Plaintiff's opposition was accepted as "expert testimony," it still would not support her claim. State laws or norms across other facilities are not determinative of whether a hospital defendant acted "appropriately." *See Williams v. Dimensions Health Corp., Inc.*, No. 16-cv-4123-PWG, 2017 WL 5668217, at *5-6 (D.Md. Nov. 27, 2017) (holding that "state law requirements are not relevant to an EMTALA claim" and that "[a] hospital's procedures need not be identical to what would be performed in other facilities"). Instead, Plaintiff needs to demonstrate that the hospital did not follow its own standard screening procedures when it initially screened her. *See Bergwall*, 243 F.Supp.2d at 372. Plaintiff offers no evidence that her "delayed" screening at UMD Capital Health violated the hospital's own screening

procedures or that her wait time differed from another patient
experiencing the same symptoms.  Plaintiff also does not provide
evidence to show that UMD Capital Health's screening procedures
required the emergency triage team to perform an MRI or x-ray for
a patient in her condition.  Therefore, because Plaintiff has not
provided any evidence that UMD Capital Health deviated from its
own medical screening procedures, Plaintiff has not proven that
Defendant failed its duty to screen.

**B.   Duty to Stabilize**

Plaintiff may be attempting to assert a "failure to stabilize"
claim in response to Defendant's summary judgment motion.  *See*
(ECF No. 27, at 25).  As noted above, her amended complaint does
not contain such a claim, and this case is well beyond the pleading
stage.  This court has held that:

> "[a] party cannot raise a new claim through
> argument on summary judgment." *Bassi &
> Bellotti S.p.A. v. Transcontinental Granite,
> Inc.*, DKC-08-1309, 2011 WL 856366, at *10
> (D.Md. Mar. 9, 2011) (citing *Sensormatic Sec.
> Corp. v. Sensormatic Electronics Corp.*, 455
> F.Supp.2d 399, 435 (D.Md. 2006)); *see also
> Potts v. DiPaola*, RDB-21-1073, 2022 WL 616814,
> at *3 (D.Md. Mar. 2, 2022) ("The Court may not
> address new claims raised in opposition to a
> dispositive motion, because it is not a
> vehicle for amending the complaint.") (citing
> *Whitten v. Apria Healthcare Group, Inc.*, PWG-
> 14-3193, 2015 WL 2227928, at *7 (D.Md. May 11,
> 2015)).

*Allegis Grp., Inc. v. Bero*, 689 F.Supp.3d 81, 142 (D.Md. 2023).

Although Plaintiff's amended complaint does reference Defendant's failure to stabilize, the allegations, even under liberal construction, fall short because they merely state: "[Defendant did not perform] an appropriate medical screening exam that was needed . . . [for the emergency] team to stabilize [my] emergency medical condition[.]" (ECF No. 5 ¶ 9). This is insufficient because:

> [T]he duty to stabilize attaches after the hospital "determines that the individual has an emergency medical condition." 42 U.S.C. § 1395dd(b)(1). "Thus, the plain language of the statute dictates a standard requiring actual knowledge of the emergency medical condition by the hospital staff." EMTALA "does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they *should have been aware*." *Vickers,* 78 F.3d at 145 (emphasis added).

*Johnson*, 2013 WL 2149762, at *5. In her amended complaint, Plaintiff does not claim that Defendant failed to stabilize her after she was screened. Instead, she conflates the duty to stabilize with the duty to screen, arguing that by delaying her medical screening, Defendant, during the wait, also failed to stabilize her. (ECF No. 5 ¶ 9). Because, however, the duty to stabilize only exists after a defendant uncovers an emergency condition, Plaintiff cannot assert a "failure to stabilize" claim

10

pertaining to the time prior to her screening.[3] Regardless, without expert testimony, Plaintiff cannot show that Defendant violated its obligations under EMTALA.

In sum, Plaintiff did not provide evidence to show that Defendant either (1) screened her differently than it would screen any patient in her condition, or (2) that it deviated from its own standard screening policy when it examined Plaintiff. Therefore, Plaintiff cannot prove that Defendant breached its duty to screen. Moreover, any attempt to raise a "failure to stabilize" claim in her response to Defendant's motion is barred because it is well after the pleadings stage and is unsupported by sufficient evidence. Accordingly, Defendant's motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, Defendant's motion will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[3] Additionally, while Defendant's records show that the doctor noted that Plaintiff "will require admission to the hospital for further work-up and evaluation," there is no indication that Plaintiff was not stable at that time. (ECF No. 25-3, at 2). To the contrary, Defendant's records state that Plaintiff "Left Against Medical Advice," her condition was "Fair," and she "exhibit[ed] mental capacity to make medical decisions." (*Id.* at 1-2).